IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLEVELL S. ROSEBORO, II,** : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 16-4951 |
| **LINCOLN UNIVERSITY, et al.,** : | |
| : | |
| Defendants. : | |

<u>**MEMORANDUM**</u>

Tucker, J.                                                                                                                              September 6, 2017

Presently before the Court are Defendants Lincoln University, Robert Jennings, and Valerie Harrison's Motion to Dismiss Plaintiff's Complaint or to Strike Improper Allegations (Doc. 9), Defendant Denise Wilbur's Motion to Join Defendants' Motion to Dismiss Plaintiff's Complaint or to Strike Improper Allegations (Doc. 20), Plaintiff's Response in Opposition to Defendants' Motion (Doc. 21), Defendants' Reply in Support of their Motion (Doc. 24), and Plaintiff's Sur-Reply (Doc. 27). Upon careful consideration of the Parties' submissions and exhibits, and for the reasons set forth below, Defendants' Motion is GRANTED IN PART AND DENIED IN PART.

I.     **FACTUAL BACKGROUND**

    A.     **The Parties**

Clevell S. Roseboro, II ("Plaintiff") was an Associate Professor and Director of Libraries on tenure track at Lincoln University. (Compl. ¶ 18, Doc. 1.) Lincoln University ("University") is a state-related institution of higher education and an instrumentality of the Commonwealth of Pennsylvania. (Compl. ¶ 10.) Dr. Robert R. Jennings was President of the University during the events that led to the current action, and through November 2014. (Compl. ¶ 11.) Dr. Valerie

Harrison is General Counsel of the University. (Compl. ¶ 12.) Ms. Kimberly Lloyd is Chair of the Board of Trustees of the University. (Compl. ¶ 13.) Ms. Dana Flint is Chair of the Faculty Judicial Committee of the University. (Compl. ¶ 14.) Ms. Denise Gaither-Hardy and Mr. Safro Kwame are members of the Faculty Judicial Committee. (Compl. ¶¶ 15–16.) Ms. Denise Wilbur is Vice President for Academic Affairs at the University. (Compl. ¶ 17.)[1]

### B. Plaintiff's Employment with the University

On July 1, 2013, Plaintiff accepted an offer from and entered into an employment contract with the University to become an Associate Professor and Director of Libraries. (Compl. ¶ 9.) Plaintiff was not tenured, but his position was tenure-track. (Compl ¶ 1.) Plaintiff's term of employment was from August 2013 to August 2014. (Compl. ¶ 19.) Plaintiff's contract was subject to the terms of the Collective Bargaining Agreement ("CBA") between the University and the Lincoln University Chapter of the American Association of University Professors ("Union"). (*Id.*)

Under the CBA, only adequate cause justifies the dismissal of an untenured faculty member before the expiration of his employment term. (Compl. ¶ 20.) An adequate cause finding is proper when a faculty member's conduct is prejudicial to the University. (*Id.*) Neither the CBA nor University policy requires the University to conduct a hearing before a faculty member is terminated. (Compl. ¶ 22.)

The CBA permits faculty members to appeal termination decisions to the Faculty Judicial Committee. (*Id.*) However, the University's Board of Trustees may reverse the Faculty Judicial

---

[1] It appearing that the individual defendants no longer have the positions alleged, for the purposes of this motion, the Court will accept all of Plaintiff's factual allegations as true and note that each individual held the respective position at all times relevant to the complaint.

Committee's decisions. (*Id*.) The Board of Trustees is not required to provide an explanation for its rulings, and its decisions are final. (*Id*.)

The CBA does not permit faculty members to challenge termination decisions through the Union. (*Id*.)

### C. Events Leading up to Plaintiff's Termination

On July 12, 2014, Plaintiff and his then fiancé, Thea Flores, became involved in a verbal altercation when Ms. Flores accused Plaintiff of infidelity. (Compl. ¶ 23.) Ms. Flores assaulted Plaintiff, who then fled to his office to spend the night. (Compl. ¶ 24.) The next day, Ms. Flores ransacked Plaintiff's office. (*Id*.) Ms. Flores returned home and told Plaintiff's daughter, that Plaintiff had inappropriate pictures of his daughter and other women on his computer. (Compl. ¶ 25.) Ms. Flores also told Plaintiff's daughter that University Police had charged Plaintiff with abuse against Ms. Flores. (*Id*.) Plaintiff denies both allegations. (*Id*.)

On July 13, 2014, Plaintiff's daughter made a voluntary statement to University Police. (Compl. ¶ 26.) Her statement was incorporated into the University's Police Incident Report ("Incident Report"). (*Id*.) The Incident Report stated that Plaintiff accidently touched his daughter's breast with his forearm. (Compl. ¶ 34.) However, she understood that the touch was inadvertent. (*Id*.) The Incident Report also stated that Plaintiff had asked his daughter whether she was a virgin and if she had engaged in oral sex. (*Id*.) The Incident Report further provided that Plaintiff's daughter was never sexually abused or mistreated. (*Id*.)

### D. Plaintiff's Termination

#### 1. The Statement of Charges

On July 14, 2014, Ms. Wilbur informed Plaintiff that he was being placed on administrative leave without providing a reason. (Compl. ¶ 27.) On July 22, 2014, Plaintiff

3

received a letter from Dr. Jennings, titled "Statement of Charges-Adequate Cause Dismissal," ("Statement of Charges") informing Plaintiff of his dismissal, effective immediately, and before the expiration of his employment term. (Compl. ¶ 28.) The Statement of Charges accused Plaintiff of being "involved in acts of violence that departed from accepted standards of professional ethics, neglect of duty, and illegal conduct prejudicial to the University." (Compl. ¶ 29.) Further, Plaintiff was accused of giving a non-University employee access to a University computer and "engaging in inappropriate or offensive words and conduct that created a sexually hostile environment." (*Id*.) The letter instructed Plaintiff to remove all of his possessions and vacate University housing.

Plaintiff alleges that the University did not investigate any of the allegations and the Statement of Charges relied "exclusively" on the Incident Report. (Compl. ¶¶ 29, 31.)

### 2. The Faculty Judicial Committee Hearing

On July 27, 2014, Plaintiff requested a hearing before the Faculty Judicial Committee to appeal his termination pursuant to the CBA. (Compl. ¶ 36.) On September 10, 2014, the Faculty Judicial Committee convened a hearing. (Compl. ¶ 37.) At the hearing, Dr. Harrison, Dr. Jennings, Ms. Wilbur, and Plaintiff testified.

Dr. Harrison testified that Ms. Flores' attorney told him that the attorney had information that Plaintiff molested his daughter. (Compl. ¶ 40.) Dr. Harrison also testified that Plaintiff was under a criminal investigation for the molestation allegation, but the investigation had stalled because Plaintiff's daughter was uncooperative. (Compl. ¶ 44.)

Dr. Jennings and Ms. Wilbur repeated the molestation allegation during the hearing, and Dr. Jennings also testified that the University had no evidence that Plaintiff "was violent in any way." (Compl. ¶¶ 38, 41.)

Defendants did not interview Plaintiff's daughter. (Compl. ¶ 49.) Neither Plaintiff's daughter nor Ms. Flores testified during the Faculty Judicial Committee hearing to substantiate the allegations against Plaintiff. (Compl. ¶ 51g.)

Plaintiff testified that he did not ask his daughter whether anyone had performed oral sex on her. (Compl. ¶ 49.) Plaintiff alleges that his daughter likely falsified the claim because she was angry with him. (Compl. ¶ 49.) Plaintiff claims that his daughter apologized to him for the false allegation. (Compl. ¶ 49.)

Plaintiff further alleges that the molestation allegation was not listed in the Statement of Charges, and no one notified Plaintiff about the allegation before the hearing. (Compl. ¶ 41.) Plaintiff claims that the Incident Report did not support the allegations contained in the Statement of Charges or the molestation allegation. (Compl. ¶ 43.) Defendants did not further investigate the allegations. (Compl. ¶ 39.) Additionally, Plaintiff asserts that the District Attorney interviewed Plaintiff's daughter before the hearing and determined that there was no probable cause to file charges against Plaintiff. (Compl. ¶ 44.) Therefore, according to Plaintiff, Dr. Harrison falsely testified that Plaintiff was under investigation at the time of the hearing. (*Id.*)

After concluding that Defendants failed to present the requisite evidence to support their adequate cause allegations, the Faculty Judicial Committee reinstated Plaintiff's employment. (Compl. ¶ 51.) The Faculty Judicial Committee stated that Plaintiff's failure to prevent Ms. Flores from ransacking his office did not justify his dismissal. (Compl. ¶ 51e.) The Faculty Judicial Committee further concluded that there was reason to believe that Plaintiff made inappropriate statements of a sexual nature to his daughter; however, the statements were not an adequate basis for termination. (Compl. ¶ 51f.) The Faculty Judicial Committee faulted the

University for failing to call Plaintiff's accusers as witnesses and give Plaintiff the opportunity to cross-examine his accusers. (Compl. ¶ 51g.)

### 3. The Board of Trustees' Appeal

On September 24, 2014, Dr. Jennings appealed the Faculty Judicial Committee's reinstatement decision to the Board of Trustees and requested that the Board reverse the Faculty Judicial Committee's ruling. (Compl. ¶ 55.) Dr. Jennings argued that even though Plaintiff did not commit an act of violence, he should bear responsibility for Ms. Flores' outburst. (Compl. ¶ 58.) He also argued that Plaintiff should be dismissed for having non-work related pictures on his computer. (Compl. ¶ 56.) Finally, Dr. Jennings argued that the Faculty Judicial Committee erred by concluding that there was no evidence that Plaintiff molested his daughter. (*Id.*)

Plaintiff alleges that Dr. Jennings failed to note in the Notice of Appeal that Ms. Flores initiated the molestation charge, Plaintiff's daughter explicitly denied the charge, and Dr. Jennings and Dr. Harrison were aware that the District Attorney declined to bring charges against Plaintiff. (Compl. ¶ 57.)

On October 17, 2014, the Board of Trustees reversed the Faculty Judicial Committee's reinstatement decision without providing a reason for its reversal. (Compl. ¶ 61.) The Board of Trustees denied Plaintiff's request to release the meeting minutes that documented the matters discussed during the appeal. (Compl. ¶ 62.)

### E. Events After Plaintiff's Termination Grievances

On December 9, 2014, a detective from the Chester County Police Department informed Plaintiff that there was no ongoing investigation involving Plaintiff. (Compl. ¶ 63.) On January 7, 2015, Plaintiff signed an affidavit regarding his conversation with the detective. (Compl. ¶ 64.) On January 8, 2015, Plaintiff sent the affidavit and a letter requesting reinstatement to all

6

Defendants. (*Id.*) Plaintiff alleges that, in a response letter, the University's attorney restated the Faculty Judicial Committee's mischaracterization that Plaintiff made a comment about performing oral sex on his daughter. (Compl. ¶ 65.) The letter was approved by Dr. Harrison, Ms. Lloyd, and Ms. Wilbur. (*Id.*)

Plaintiff later applied for a job at Florida Memorial University. He claims he was rejected because Defendants informed Florida Memorial University that Plaintiff was terminated for sexually abusing his daughter. (Compl. ¶ 66.)

In the Complaint, Plaintiff alleges four counts against Defendants. In Count One, Plaintiff asserts a claim under 42 U.S.C. § 1983 against the University, Dr. Jennings, Dr. Harrison, Ms. Lloyd, and Ms. Wilbur. Plaintiff claims that he was denied adequate pre- and post-termination procedures, in violation of his procedural due process rights. In Count Two, Plaintiff asserts a claim under 42 U.S.C. § 1983 against the University, Dr. Jennings, Dr. Harrison, Ms. Lloyd, and Ms. Wilbur for substantive due process violations. In Count Three, Plaintiff alleges a stigma-plus claim against the University, Dr. Jennings, Dr. Harrison, Ms. Lloyd, Ms. Flint, Ms. Gaither-Hardy, Mr. Kwame, and Ms. Wilbur. Plaintiff claims Defendants repeated false claims that Plaintiff molested his daughter, used the false claims to terminate Plaintiff, and then disseminated the false claims publicly. In Count Four, Plaintiff alleges that Defendants breached his employment contract because he was terminated without adequate cause.[2]

---

[2] Plaintiff has withdrawn Counts Two and Four. (Pl.'s Opp'n to Defs.' Mot. to Dismiss 1 n.1.) As such, the Court need not address Plaintiff's substantive due process and breach of contract claims.

## II.     STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendants move to strike the allegations in paragraphs 64 and 65 of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(f).

When considering a 12(b)(6) Motion, the Court must "accept all factual allegations as true . . . [and] construe the Complaint in the light most favorable to the plaintiff." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. A claim is plausible if the complaint presents facts that allow the Court reasonably to infer wrongdoing by the defendant. *Id*. The plausibility requirement does not require that a complaint demonstrate that defendant's wrongdoing was probable. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, the pleaded facts must allow the Court "to infer more than the mere possibility of misconduct." *Ashcroft*, 550 U.S. at 679. Determining whether a complaint has raised a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). However, Rule 12(f) Motions "are not favored and usually will be denied unless the allegations have no possible relation to the

controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Dann v. Lincoln Nat. Corp.*, 274 F.R.D. 139, 142–43 (E.D. Pa. 2011) (quoting *Wilson v. King,* No. 06–2608, 2010 WL 678102, at *2 (E.D. Pa. Feb. 24, 2010)).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint asserting that: (1) Plaintiff's pre-termination procedural due process claim is time-barred, (2) Defendant's post-termination procedures did not violate Plaintiff's procedural due process rights, and (3) Plaintiff fails to establish a stigma-plus claim. In the alternative, Defendants move to strike the allegations in paragraphs 64 and 65 of Plaintiff's Complaint. The Court finds that Plaintiff's pre-termination procedural due process claim is time-barred, grants leave for Plaintiff to supplement his post-termination procedural due process claim, and concludes that Plaintiff states a plausible claim for stigma-plus. Lastly, the Court denies Defendants' alternative motion to strike.

### A. Plaintiff's Procedural Due Process Claims (Count One)

Plaintiff is suing the University, Dr. Jennings, Dr. Harrison, and Ms. Wilbur under 42 U.S.C. § 1983 for their purported failure to provide procedural due process. To establish a § 1983 claim, a plaintiff "must establish that [he] was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

A state actor may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Lincoln University, a state-related institution of higher education and an instrumentality of the Commonwealth of Pennsylvania, is a state actor. In assessing a procedural due process claim, the Court must determine: (1) whether "the asserted individual interests are encompassed within the [F]ourteenth [A]mendment's protection of 'life,

liberty, or property'"; and (2) whether "the procedures available provided the plaintiff with 'due process of law.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

For purposes of this analysis, the Court will assume that Plaintiff has pled sufficient facts to establish that he had an employment relationship with Lincoln University that created a property interest protected by the Fourteenth Amendment. *See Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997) ("[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their [employment] and cannot be fired without due process.") The Court also assumes that Plaintiff was deprived of that property interest when he was terminated.

Typically, the Court would continue its analysis and address whether "the procedures available provided the plaintiff with due process of law." 227 F.3d at 116. However, the Court need not address the merits of Plaintiff's procedural due process claims at this time because (1) Plaintiff's pre-termination claim is time-barred, and (2) the Court will grant Plaintiff leave to supplement his post-termination claim. Each claim will be addressed separately below.

### 1. Plaintiff's Pre-Termination Procedural Due Process Claim is Time-Barred

Plaintiff's pre-termination procedural due process claim is barred by Pennsylvania's statute of limitations. For actions brought under 42 U.S.C. § 1983, "federal courts apply the state's statute of limitations for personal injury." *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The statute of limitations for personal injury in Pennsylvania is two years. 42 Pa. Stat. and Cons. Stat. Ann. § 5524 (West 2017). The statute of limitations begins when "the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599. In employment cases, the limitation period begins when the employer's adverse decision is made. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980).

The existence of grievance procedures to contest termination or adverse employment decisions does not toll the statute of limitations. *Ricks*, 449 U.S. at 261.

In *Ricks*, the United States Supreme Court held that the statute of limitations governing the plaintiff's claims began when he received notice that his tenure was denied, despite the existence of grievance procedures. 449 U.S. 250. In *Ricks*, the plaintiff's application for tenure was denied. *Id.* at 252. The plaintiff appealed the decision to the college's grievance committee. *Id.* A few months later, the grievance committee upheld the plaintiff's tenure denial. *Id.* at 254.

The plaintiff filed a suit in the District Court of Delaware claiming national origin discrimination. *Id.* The court ruled that plaintiff's claims were barred by Delaware's three-year statute of limitations. *Id.* at 252–55. The court ruled that the statute of limitations expired three years from the date plaintiff received his tenure denial notice. *Id*. The Court of Appeals for the Third Circuit reversed the district court's decision, and the Supreme Court granted certiorari. *Id.* at 256.

The Supreme Court ruled that the plaintiff's tenure denial was a final decision, despite the availability of grievance procedures. 449 U.S. at 259–60. The Court stated that grievance procedures are a process to provide remedies for a final decision that may have been made in error; they are "not an opportunity to influence that decision before [the decision was] made." *Id*. at 261. The Supreme Court held that grievance procedures do not toll the statute of limitations and the statute of limitations begins once an employee is notified about an adverse employment decision. *Id*. Thus, the Delaware statute of limitations began to run when the plaintiff was notified of his tenure denial. The Supreme Court reversed and remanded the case to the Third Circuit to reinstate the lower court's order to dismiss the complaint as time-barred. *Id.* at 262.

In the matter before this Court, Defendants argue that Plaintiff's pre-termination due process claim is time-barred. (Defs.' Mem. in Supp. 7–8.) Defendants argue that the statute of limitations began on July 22, 2014, the day Plaintiff received his termination notice. *Id.* Plaintiff argues that his claim is timely because the statute of limitations began on October 17, 2014, the day the Board of Trustees reversed the Faculty Judicial Committee's reinstatement decision. (Pl.'s Opp'n to Defs.' Mot. to Dismiss 6.)

The Court agrees with Defendants. In his Complaint, Plaintiff recalls that he received the Statement of Charges on July 22, 2014, which informed him that his termination was "effective immediately." (Compl. ¶ 28.) The Statement of Charges also instructed Plaintiff to vacate his University housing and remove all of his possessions by July 23, 2014. (Compl. ¶ 28.) These facts demonstrate that the decision to terminate Plaintiff was final as of July 22, 2014.

Similar to *Ricks*, the grievance procedures available to Plaintiff were simply a remedy, rather than an opportunity to influence the termination decision. Upon receipt of the Statement of Charges, Plaintiff should have known that Defendants potentially violated his procedural due process rights as they applied to pre-termination procedures. Since, as held in *Ricks*, grievance procedures do not toll the statute of limitations, Plaintiff's pre-termination procedural due process claim expired on July 22, 2016, two years from the date that he received his termination notice. Thus, Plaintiff's claim is barred by Pennsylvania's statute of limitations.

Plaintiff further asserts that his claim is timely because the decision to terminate Plaintiff "was but the first in an ongoing series of actions that defamed Plaintiff and made his termination an inevitability." (Pl.'s Opp'n to Mot. to Dismiss 7–8.) Ostensibly, Plaintiff argues that the continuing violation doctrine applies to his pre-termination claim and tolls the two-year limitations period. The continuing violation doctrine tolls the statute of limitations "when a

defendant's conduct is part of a continuing practice . . . [and] the last act evidencing the continuing practice falls within the limitations period." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act [i.e., termination] starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002). Discrete discriminatory acts must be raised within the statute of limitations governing each act. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (applying the continuing violation doctrine to § 1983 claims, finding that termination is a discrete act, and holding that the statute of limitations begins when the discrete act occurs).

The Court finds that the continuing violation doctrine is inapplicable to Plaintiff's pre-termination procedural due process claim, and therefore, does not toll the two-year limitations period. Plaintiff received notice of his termination on July 22, 2014, and under *Ricks*, the statute of limitations for wrongful termination began once he was notified of an official termination decision. Plaintiff failed to file his Complaint within the applicable limitations period, and since his pre-termination procedural due process claim arises from his termination, which is a discrete act, Plaintiff's claim is not part of a continuing violation. Thus, Plaintiff's claim is time-barred. Therefore, the Court grants Defendants' Motion to Dismiss as it relates to Plaintiff's procedural due process claim for lack of pre-termination procedures in Count One.

### 2. Plaintiff may Amend Complaint for Post-Termination Due Process Claim

Plaintiff argues that after filing his Complaint, he received additional facts that support his post-termination due process claim. (Pl.'s Opp'n to Defs.' Mot. to Dismiss 3 n.2.) Plaintiff

13

requests permission to amend his Complaint. The Court grants Plaintiff's request to amend his Complaint as it relates to Plaintiff's post-termination due process claim.

### B. Plaintiff States a Plausible Claim for Stigma-Plus (Count Three)

Plaintiff asserts a stigma-plus claim against the University, Dr. Jennings, Dr. Harrison, Ms. Lloyd, Ms. Flint, Ms. Gaither-Hardy, Mr. Kwame, and Ms. Wilbur. Plaintiff alleges that Defendants knowingly repeated false claims that Plaintiff molested his daughter, used the false claims to terminate Plaintiff from employment, and then disseminated the false claims to potential employers, thereby, depriving him of a liberty interest in his reputation. A stigma-plus claim is a "due process claim for deprivation of a liberty interest in reputation . . . [and the] plaintiff must show a stigma to his reputation plus deprivation of some additional [constitutional] right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). "In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Id.* (quoting *Codd v. Velger*, 429 U.S. 624, 628, (1977)). If a plaintiff plausibly asserts a stigma-plus claim, a plaintiff is entitled to a hearing to clear his name. *Ersek v. Twp. of Springfield*, 102 F.3d 79, 84 (3d Cir. 1996).

There are two prongs to the stigma-plus test: (1) "stigma," and (2) "plus." "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination [or the deprivation of an additional constitutional right] is the 'plus.'" *Hill*, 455 F.3d at 236. Each prong will be discussed separately below.

### 1. Plaintiff Satisfies the Stigma Prong

Accepting all of Plaintiff's allegations as true, Plaintiff pleads facts sufficient to establish the stigma prong of the stigma-plus test. To satisfy the stigma prong, a plaintiff must allege that: (1) the defendant made stigmatizing statements, (2) the statements were false, and (3) the defendant disseminated the stigmatizing statements publicly. *Hill*, 455 F.3d at 236.

First, Defendants' repeated accusations that Plaintiff molested his daughter were stigmatizing statements. (Compl. ¶¶ 40, 41, 57.)

Second, Plaintiff alleges enough facts to support his contention that the molestation accusation was false. Before the Faculty Judicial Committee hearing, the District Attorney, who previously interviewed Plaintiff's daughter, determined that there was no probable cause to file sexual assault charges against Plaintiff. (Compl. ¶¶ 42, 44.) In addition, Plaintiff's daughter apologized to Plaintiff for leveling the false allegation. (Compl. ¶ 49.) The Faculty Judicial Committee concluded that there was no evidence that Plaintiff molested his daughter. (Compl. ¶ 51.) On January 7, 2015, Plaintiff sent an affidavit to Defendants confirming his conversation with the police, wherein the police disclosed that there was no ongoing investigation involving Plaintiff for molestation. (Compl. ¶ 64.) These facts, collectively, adequately support Plaintiff's claim that the molestation accusation was false.

Third, the stigmatizing statements were made public when Defendants disseminated the accusation to Florida Memorial University. *Povish v. Pa. Dep't of Corrs.*, No. 13–0197, 2014 WL 1281226, at *5 (E.D. Pa. Mar. 28, 2014) (collecting cases and stating that "[d]epending on the facts, quite limited dissemination may be sufficient").

Thus, Plaintiff alleges enough facts to demonstrate a "stigma."

### 2. Plaintiff Satisfies the Plus Prong

Accepting all of Plaintiff's allegations as true, the Court finds that, at this stage, Plaintiff alleges facts sufficient to satisfy the plus prong of the stigma-plus test. To satisfy the plus prong, a plaintiff must show the deprivation of a protected constitutional right. *Hill*, 455 F.3d at 236. The Supreme Court has recognized that a constitutionally protected liberty interest includes "the protection against interference in the absence of due process with an individual's 'later opportunities for . . . employment.'" *McKnight v. Se. Pa. Transp. Auth.*, 583 F.2d 1229, 1236 (3d Cir. 1978) (quoting *Goss v. Lopez*, 419 U.S. 565, 575 (1975)). Thus, "allegations of harm to future employment possibilities are sufficient to withstand a motion to dismiss in the stigma-plus context." *Fouse v. Beaver Cty.*, 2:14-CV-00810, 2015 WL 1967242, at *6 (W.D. Pa. May 1, 2015) (citing *Ersek*, 102 F.3d at 84–85; *McKnight*, 583 F.2d at 1236.)).

Therefore, the Court concludes that Plaintiff's allegation that Defendants' stigmatizing statements, particularly their statements related to the molestation accusations to Florida Memorial University, undermined Plaintiff's ability to find employment and is sufficient to satisfy the plus prong.

Defendants argue that their dissemination of the stigmatizing statements to Florida Memorial University was made after Plaintiff was terminated and not in connection with his termination. As such, Defendants' contend, Plaintiff cannot use his termination of employment to show a deprivation of a constitutionally protected right.

At this time, the Court disagrees with Defendants' argument that Plaintiff's termination and the public dissemination of the stigmatizing statements were not connected. Defendants used the stigmatizing statements to terminate Plaintiff from employment. When Florida Memorial University called Defendants to inquire about Plaintiff's work history, Defendants restated the

16

stigmatizing statements as the reason for Plaintiff's termination from employment. There is a sufficient nexus between Plaintiff's termination, the dissemination of the stigmatizing statements, and Plaintiff's inability to gain employment with Florida Memorial University. For this reason, Plaintiff satisfies the plus prong of the stigma-plus test.

Defendants further argue that, even if Plaintiff satisfies the stigma-plus test, Plaintiff's claim must be dismissed because Plaintiff was granted a name clearing hearing. The Court agrees that Plaintiff had an opportunity to clear his name at the Faculty Judicial Committee hearing. However, Defendants continued to repeat the accusations to Florida Memorial University, even after the Faculty Judicial Committee determined that the accusations lacked support, and undermined the name clearing hearing. Accordingly, Defendants' motion to dismiss Plaintiff's stigma-plus claim is denied.

### C. Defendants' Motion to Strike is Denied

Defendants argue that Plaintiff's allegations in paragraphs 64 and 65 should be stricken because they are inadmissible. Defendants' argument is insufficient to meet their burden of demonstrating that the allegations have no possible relation to the controversy, may cause prejudice to one of the parties, or will confuse the issues. Accordingly, Defendants' motion to strike is denied.

## IV. CONCLUSION

For the reasons set forth herein, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion. An appropriate order follows.